CALVIN CHAMBERLAIN *versus* JAMES SANDS & *al.*

If a paper be recognized by a witness as containing a correct statement of the facts in relation to a certain transaction, as they were known to him when it was presented to him at a previous time, he may use it for the purpose of refreshing his recollection, although it had been drawn up by another person more than twenty days after the events transpired. But unless the paper is recognized by the witness as a correct account of the transaction, it is inadmissible for such purpose.

The general rule of evidence is well settled, that a party cannot be permitted to discredit his own witness. And no exception to the rule will permit the party to introduce testimony to prove, that his witness had at different times made declarations at variance with his testimony.

The minutes of the proceedings of two justices of the peace and of the quorum, selected and acting in the examination of a debtor desirous of taking the debtors' oath, informal as a record, but containing minutes from which a more extended and formal record may be made, are admissible in evidence until the record is completed.

Where " there were two citations by the same debtors to the same creditor on different bonds made out at the same time and returnable at the same time"; and the minutes of the justices states, that the plaintiff's attorney appointed " one of the justices to act on each citation," and where each citation contained a notice to the creditor, that all the debtors were to make a disclosure at the same time, it is to be understood, that such justice was authorized to act upon all the cases named in it, and to do all acts respecting it, which the law required to be done.

Where the justices had been duly selected by the parties and were at the place designated, " within the time at which the creditor was cited to appear," and one of three debtors was also there, and the attorney of the creditor, the justices have jurisdiction, and may adjourn to a different hour of the same day, and have power at such adjournment to take the disclosures of and administer the oath to all the debtors.

Although two of the debtors did not personally appear until the adjournment, yet that fact did not take from the justices their jurisdiction, nor authorize the creditor's attorney to withdraw the authority vested in one of the justices by his appointment.

Under the poor debtor act, (Rev. St. c. 148) the debtor may select one of the justices to take his disclosure at any time after the citation to the creditor has been prepared and before the tribunal has been organized.

Chamberlain *v.* Sands.

This case came before this Court on the following exceptions : —

" This was an action of debt on a poor debtor bond, taken on an execution according to chap. 148 of Rev. Stat., dated Feb. 28, 1844, for the penal sum of $69,44.

" The due execution of said bond was admitted.

" The defendants introduced in defence the certificate, of J. H. Hilliard and G. P. Sewall, two justices of the peace and quorum for said county, of the administration of the poor debtor oath to said principal defendants, Sands, Burnham and Averill, Aug. 24, 1844, which certificate was in the form prescribed in sec. 31, chap. 148, of Rev. Stat., plaintiff objecting to it because it did not show how the justices were appointed, but the Court ruled that it made out a *prima facie* defence, and that plaintiff might show that the justices had no jurisdiction.

" Plaintiff's counsel then called said Hilliard, and was about to place in his hands a memorandum to assist his recollection, when defendants' counsel objected to it.   It was a memorandum, in the handwriting of Mr. Prentiss, the attorney for the plaintiff, drawn up by him on the 16th Sept. 1844, in the form of a letter addressed to said Hilliard.   Mr. Prentiss, being called on for his reasons for presenting said paper, stated, as counsel, that the memorandum was drawn up by him, when the facts were fresh in his memory, and that said Hilliard examined it the next day, when fresh in his recollection, and said it was correct, and that it remained in the hands of said Hilliard till Jan. 1846.

" The Court sustained the objection of the defendants' counsel, and ruled, that it was not proper for Mr. Hilliard to use said memorandum to refresh his memory as a witness.

" The said Hilliard had retained said memorandum till last January, when he returned it to him, and that he had had it ever since.

" Said Hilliard testified, that about 11 o'clock on the day of the disclosure, he thought a little before 11, Mr. Prentiss, on behalf of the creditor, came to him, told him that Sands had

appeared, that Burnham and Averill had not appeared, and that he wanted him to go up and hear the disclosure of Sands — that he did not recollect Prentiss' telling him that the hour had gone by and that he should have nothing to do with the disclosure of Burnham and Averill, if they did appear; that they finished the disclosure of Sands between 11 and 12, but did not then administer to him the final oath — that Ira Wallace, a surety on the bond, appeared and wished for a continuance on the ground, that Burnham and Averill were out of the village, till 2 o'clock P. M. — that Prentiss on behalf of the creditor, for whom he acted as attorney, after Sands' disclosure was signed and sworn to, protested against Burnham and Averill's disclosures, if they came afterwards, and said that he should have nothing to do with their disclosure, as the hour had gone by; and that said justices had no jurisdiction or right to adjourn till afternoon to give them an opportunity to appear, or to do any thing about their disclosure. He said we might then administer the oath to Sands. Said Prentiss left the office and did not return. The justices adjourned till 2 o'clock P. M. Neither Burnham nor Averill appeared in the forenoon. At 2 o'clock P. M. said Sands, Burnham and Averill appeared, and we administered the oath to them all; said Prentiss was not present.

" I was not appointed by any officer, — I had no authority except from Mr. Prentiss. I supposed I was acting right in taking the disclosure of Burnham and Averill, and that I had authority from Prentiss to do so.

" *H. E. Prentiss* testified that he went to the office of Cony and Sewall, the place appointed in the citation, at the hour of 10, the time appointed, that Sands appeared before 11, but Burnham and Averill did not — that he was governed by his watch, which was near five minutes faster than the Bangor time and which indicated a different time from the watch of Hilliard, — that a few minutes after 11, Bangor time, Sands having decided that he would disclose, he went for Mr Hilliard and told him, that Sands having appeared in season he was willing he should disclose, but that Burnham and Ave-

rill not having appeared, he would object to their disclosing, if they did appear, and that he asked him to go up and attend the disclosure of Sands, — that he appointed him to hear the disclosure of Sands only, and gave him no authority to hear the disclosure of Burnham or Averill, — that the disclosure of Sands having been made and signed and sworn to, something was said, he believed at first by Sewall, about adjourning till 2 P. M., and not administering the final oath to Sands till then, — that he told the justices that they might administer the poor debtor oath to Sands as soon as they pleased, but as the hour had gone by and Burnham and Averill had not appeared, he should wait no longer, and that he protested, that they had no right to disclose after that time, and that he should have nothing to do with any disclosure of theirs, and that they (the justices) had no power to adjourn, or do any thing about the disclosure of Burnham and Averill. — That this was at twenty-five minutes past 11 by his watch, which he looked at at the time. — That he then left the office and did not return that day. — That Sewall on that day did not suggest or pretend that he had been appointed a justice by Burnham or Averill, or that he had any authority from them, — that he made a memorandum of these facts soon after they occurred, and had a distinct recollection of them, and this memorandum is the same offered to be placed in the hands of Hilliard and was used by said Prentiss in giving his testimony.

" *G. P. Sewall,* called by defendants, testified that at the time the citation was made by his partner, Sands, Burnham and Averill were then to sign it, and that all at that time requested him to act as one of the justices in taking their disclosure. This evidence was objected to as inadmissible, because incompetent to prove a legal appointment of said Sewall by Burnham and Averill, but admitted, and it was the only evidence of his authority from them. Sewall testified, that they got together, he believed, about ten; that Sands' disclosure occupied but a few minutes, and that his impression was that the adjournment was moved by Wallace and ordered before 11 ; and that he assumed to act for the debtors; that

Chamberlain *v.* Sands.

there were two citations by the same debtors to the same creditor, on different bonds made out at the same time and returnable at the same time ; and that before commencing the disclosure of Sands, he asked said Prentiss if he appointed Hilliard, as justice on each citation, and he said yes.

The defendants offered the two citations with the following writing on the back of each, which said justices testified, that they made up and signed at the time of the disclosure, and that it was their only record of the disclosure. Said Hilliard testified, that it was written by Sewall, and that he had no recollection of noticing its phraseology as to his appointment at the time he signed it. Plaintiff objected to the admission of this writing, as not a record but only minutes from which to make up a record ; but it was admitted. On cross-examination said Hilliard said he did not desire to make any alteration in the record, that he examined it before he signed it, and made an interlineation in his own handwriting. The record was as follows. "Penobscot ss. August 24, 1844. On the twenty-fourth instant, at ten A. M. the creditor, by H. E. Prentiss, his attorney, appeared and appointed J. H. Hilliard, Esq., one of the justices to act on each citation ; Sands appeared only, and disclosed on each about eleven. After Sands' disclosure was partially completed, Wallace, a surety on the bond, appeared and requested an adjournment to two P. M., which was done ; at that hour, each and all appeared, disclosed and were discharged, and took the oath. A certificate to issue stating these facts.           " J. H. Hilliard, ⎱ Justices of Peace
                                    " G. P. Sewall. ⎰ and Quorum."

" The citation was dated July 18, 1844.

" The plaintiff offered to show by the testimony of said Prentiss, that on two different occasions since said disclosure, said Hilliard had said, that he was appointed by said Prentiss to take the disclosure of Sands only, and had no authority from him to take the disclosure of Burnham or Averill ; but the evidence was objected to by defendants' counsel and excluded by the court, on the ground that said Hilliard had been called by plaintiff.

" The Judge charged the jury, that the certificate made out a *prima facie* defence; that the burden of proof was on the plaintiff, to show that the justices had not jurisdiction; and this the plaintiff was permitted to do by parol evidence, notwithstanding the certificate and the record; that if Burnham and Averill at the time the citation was made out, requested Sewall to act for them in taking the disclosure, that request was a sufficient appointment, and authorized him to act; that they would find from all the evidence, the question of fact, whether Hilliard was appointed by Prentiss to take the disclosure of Burnham and Averill; that the record was not conclusive, but being made at the time was entitled to much consideration; that plaintiff had contended that by a true construction of the language of the record, it only stated that he had appointed Hilliard to take the disclosure of Sands, and did not state that he had appointed Hilliard to take the disclosure of Burnham and Averill; but the Judge instructed the jury, that this construction which plaintiff contended for, was incorrect, and that the language of the record would embrace all the parties embraced in the citation, and meant that Hilliard was appointed to take the disclosure of all three of the debtors; that plaintiff must satisfy them that Hilliard was not appointed by Prentiss to take the disclosure of Burnham and Averill; that if they believed that Hilliard's authority to act, was expressly limited to Sands, the plaintiff is entitled to their verdict; if appointed for all, he had authority to act for all. That plaintiff had contended that Burnham and Averill, not appearing in season, was fatal, and that they had no right to disclose after the hour had expired; and that even if Prentiss had appointed Hilliard to take the disclosure of Burnham and Averill, when he found they did not appear, he had a right to withdraw his authority, and that he did withdraw it. But the court instructed the jury that if the evidence in this case satisfied them, that within the time at which the plaintiff was cited to appear, the said justices came to the place appointed to take the disclosure, that said Hilliard was appointed by the plaintiff to act as a justice in taking the disclosure of all the debtors,

and that said Sewall previously to said time had been appointed by the debtors to act as such justice, that they had jurisdiction of the subject matter of the disclosure, &c., and that they had a right to adjourn till the afternoon. And that although two of the debtors did not personally appear till the afternoon, yet that the fact did not take from them the jurisdiction, nor authorize Prentiss to withdraw the authority vested in said Hilliard by his appointment. After the jury had been out some time they sent in a written request to the Judge for his minutes of the testimony of Hilliard and Prentiss, as to the conversations in Hilliard's office, when Prentiss went there after him ; and the Judge called in the jury and repeated to them all the testimonies bearing on the question of Hilliard's appointment, and was then asked by one of the jury what was the legal meaning of the language of the record " that Hilliard was appointed to act on each citation," and if it meant that he was appointed to act in the disclosure of all three ; and the Judge instructed him that it did, that to act on each citation meant to act on the whole subject matter of each citation. The jury after a few minutes returned a verdict for defendants. All the papers may be referred to. To the refusal of the Judge to permit said memorandum to be placed in the hands of said Hilliard, to his rejection of the declarations of said Hilliard offered by plaintiff, to his admission of the evidence to show the appointment of Sewall, to his admission of said writing called a record, to all his rulings and instructions to the jury, and to all other illegal rulings, orders or proceedings adverse to the plaintiff, the plaintiff excepts and reduces his exceptions to writing and signs the same before the adjournment of the court without day.        " Henry E. Prentiss, plaintiff's att'y."

" The foregoing exceptions having been presented to the court before the final adjournment thereof, and being found conformable to the truth of the case, are hereby allowed and certified.

        " Fred. H. Allen, Just. Dist. Court, presiding," &c.

*Prentiss*, for the plaintiff, argued in support of the seven

objections to the rulings and instructions of the District Court, stated in the opinion of this Court.

As authorities, he cited under the first : — 1 Greenl. Ev. § 436 and note ; 1 Stark. Ev. 128.

Under the second : — 1 Greenl. Ev. § 444.

Fourth : — 3 Metc. 571.

Fifth : — *Ayer* v. *Woodman,* 24 Maine R. 196.

*Ingersoll,* for the defendants, said he would reply to such of the objections, as seemed to him the most plausible.

The first was rightly settled by the jury. The Court was clearly right.

The second is a mere question, whether he can impeach a witness called by himself.

As to the third, the only objection is, that it was too favorable for the plaintiff.

Fourth depends on the meaning of the words. Thinks this Court will understand the language to mean the same as the district judge did.

Fifth : — This is answered by the case cited for the plaintiff. *Ayer* v. *Woodman,* 24 Maine R. 196.

The opinion of the Court was drawn up by

SHEPLEY J. — The suit is upon a bond made by debtors with sureties to their creditor in conformity to the provisions of the statute c. 148.

A certificate made by two justices of the peace and of the quorum, in the form prescribed, was introduced to prove performance of one of the conditions of the bond. The plaintiff called one of them as a witness and proposed to place in his hands a letter addressed to him by the plaintiff's attorney, purporting to state the facts, as they occured on August 24, 1844, being the day of the date of the certificate, to refresh his recollection. An objection was interposed. The counsel being called upon for his reasons, stated, that it was drawn up by him when the facts were fresh in his recollection, and was examined by the witness, when the facts were fresh in the

recollection of the witness, and that it was admitted by him to be correct.

1. It is contended, that the presiding Judge incorrectly decided, that the document could not be properly used by the witness for that purpose. If it had been recognized by the witness as containing a correct statement of the facts as they were known to him at the time, when it was first presented to him, he might have been permitted to use it for that purpose, although it had been drawn up by another person more than twenty days after the events transpired. This does not appear; nor is it apparent, that the witness desired to have the use of it. The counsel appears to have rested the right to have the witness use it, not upon an examination of the witness as to his knowledge of its accuracy, but upon his own statement respecting it. This may be explained by subsequent events. The facts stated in that paper were introduced in evidence by the testimony of the attorney. The witness had before been partially examined, and he was subsequently further examined, and he thus appears to have had an opportunity to have known the contents of the paper before his testimony was finally closed and before it was too late to have corrected any error made in the former part of it. As he did not do it, the plaintiff afterwards proposed to prove, that he had made declarations at variance with his own testimony and in accordance with the statements contained in that paper. Upon examination of all the proceedings at the trial as exhibited in the bill of exceptions, the paper does not appear, except from remarks of counsel, at any time to have been recognized by the witness as containing a correct account of the transactions; but rather to have been pressed upon his consideration to influence his mind during his examination. The decision of the Court under such circumstances cannot be considered as affording just cause of complaint.

2. The next objection is made to the exclusion of testimony to prove, that the witness thus called by the plaintiff had on two different occasions, made declarations at variance with his testimony. To the general rule, that a party cannot

be permitted to discredit his own witness, an exception was admitted, in the case of *Dennet* v. *Dow*, 17 Maine R. 19, that he might do so, when he was obliged to call an attesting witness. Otherwise the rule was affirmed. The present case comes within the rule, and not within the exception.

3. The next error alleged is the admission as evidence of the document, called a record, made at the time and signed by the justices. They testified, that it contained the only record of their proceedings and that they had no desire to make any correction or alteration of it. The statute does not in words require the justices to keep a record of their proceedings; but it authorizes them in certain cases to award costs, to issue an execution for them, and to do other acts, necessarily implying the existence of such a record. The paper signed by them is quite informal, and if it must rather be regarded as a paper containing minutes, from which a more extended and formal record could be made, it might, in accordance with decided cases, be received in evidence before such formal record had been made. *Davidson* v. *Slocomb*, 18 Pick. 464; *Pruden* v. *Alden*, 23 Pick. 184.

4. It is insisted, that an erroneous construction of that document was made by the presiding Judge in his remarks upon it to the jury. The counsel for the plaintiff contended, that the language of that record authorized the conclusion, that he had appointed one of the justices to take the disclosure of one of the debtors only. The jury were otherwise instructed. It is stated in the bill of exceptions, "that there were two citations by the same debtors to the same creditor on different bonds made out at the same time and returnable at the same time." The paper called a record states, that the plaintiff's attorney appointed "one of the justices to act on each citation." Each contained a notice to the creditor, that all the debtors were to make a disclosure at the same time. To act upon each citation is to act upon all the cases named in it, and to do all acts respecting it, which the law required to be done.

5. The record further states, that one of the debtors, " Sands,

appeared only and disclosed on each about eleven. After Sands' disclosure was partially completed, Wallace, surety on the bond, appeared and requested an adjournment to two P. M., which was done ; at that hour each and all appeared, disclosed, and were discharged and took the oath." It is insisted, that all their proceedings after eleven o'clock were void. Acting in obedience to their instructions the jurors must have found that the justices had been duly selected by the parties, and that they were at the place designated " within the time at which the plaintiff was cited to appear." One of the debtors was also there, and the attorney of the creditor. The tribunal thus correctly organized in due season, had jurisdiction of the case. The sixth section of the statute gave them a discretionary power, " to adjourn from time to time, as they see cause." They might proceed to take the disclosure of the one present ; and for their own convenience, or at the suggestion of one appearing in behalf of the absent debtors, might adjourn.

6. It is also insisted, that the instructions were erroneous in stating, " that although two of the debtors did not personally appear till the afternoon, yet that fact did not take from them their jurisdiction," nor authorize the plaintiff's attorney to withdraw the authority vested in one of the justices by his appointment. If the former clause of these instructions were not correct, the jurisdiction of the justices must depend upon the personal presence of all the debtors before an adjournment could take place. Such a construction would deprive the one who was present of the right to proceed in the absence of the others, and to obtain a legal discharge.

It would also prevent a debtor, who, by illness, mistake or casualty, should fail to be present at the appointed time, from performing the condition of his bond, unless there were time for a new notice. That neither party can revoke the authority of one of the justices, and thus interrupt the proceedings of the tribunal, after it has been duly organized and has entered upon the performance of its duties, was determined in the case of *Ayer* v. *Woodman*, 24 Maine R. 196.

7. It is further insisted, that one of the justices was not

Chamberlain v. Sands.

legally selected by the debtors, because he was requested to act in that capacity, when they signed the citation to the creditor. The statute does not prescribe a time within which the selection shall be made. It is not perceived, that the rights of a creditor can be impaired by a selection made by a debtor, at any time after the citation has been prepared, and before the tribunal has been organized. There does not appear to be any period of limitation so appropriate, as that between the commencement of the proceedings and their completion, for the final action of the tribunal.          *Exceptions overruled.*